1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8
9  CARLOS HENDON,                          CASE NO. 1:05-cv-00790-OWW-SMS PC

10          Plaintiff,                     FINDINGS AND RECOMMENDATIONS
                                           RECOMMENDING GRANTING
11  v.                                     DEFENDANTS' MOTIONS FOR SUMMARY
                                           JUDGMENT
12  REED, et al.,
                                           (ECF Nos. 36, 41, 47)
13          Defendants.
    _____/      OBJECTIONS DUE WITHIN THIRTY DAYS
14

15  **I.    Procedural History**

16          Plaintiff Carlos Hendon ("Carlos Hendon") is a state prisoner proceeding pro se and in forma

17  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on

18  Plaintiff's second amended complaint, filed February 25, 2008, against Defendants Granillo, Lopez,

19  and Brimage[1] for violations of the Eighth Amendment.  (ECF No. 11.)  On July 9, 2010, Defendants

20  filed a motion for summary judgment on the issue of excessive force in violation of the Eighth

21  Amendment.   (ECF No. 36.)   The Magistrate Judge issued findings and recommendations

22  recommending granting Defendants' motion for summary judgment on the ground that they were

23  entitled to qualified immunity on January 31, 2011. (ECF No. 42.)  On March 23, 2011, the District

24  Judge issued an order vacating the findings and recommendations and referring the matter back to

25  the Magistrate Judge for further proceedings. (ECF No. 44.)  The Magistrate Judge issued an order

26  directing Defendants to file a supplemental motion for summary judgment addressing the action as

27

28          _____

            [1]Defendant Brimage is identified as Julie B. in the second amended complaint.

                                              1

conditions of confinement in violation of the Eighth Amendment. (ECF No. 45.) On May 6, 2011, Defendants filed a motion to offer an unenumerated Rule 12(b) motion beyond time and a supplemental motion for summary judgment.[2] (ECF Nos. 46, 47.) Plaintiff has not filed an objection.[3]

Defendants bring the motion for summary judgment on the grounds that 1) Plaintiff's Eighth Amendment rights were not violated; 2) Plaintiff failed to comply with the California Tort Claims Act thereby barring his state law claims; 3) Plaintiff failed to exhaust administrative remedies; 4) Plaintiff cannot recover for emotional injury because he did not suffer a cognizable physical injury; and 5) Defendants are entitled to qualified immunity.

## II.   Motion to Dismiss For Failure to Exhaust Administrative Remedies

### A.   Legal Standard

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The section 1997e(a) exhaustion requirement applies to all prisoner suits relating to prison conditions. Woodford v. Ngo, 548 U.S. 81, 85 (2006). All available remedies must be exhausted, not just those remedies that meet federal standards, Woodford, 548 U.S. at 84, nor must they be "plain, speedy, and effective," Booth v. Churner, 532 U.S. 731, 739 (2001). Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. Id at 741; see Woodford, 548 U.S. at 93.

The California Department of Corrections has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084, et seq. "Any inmate or parolee under the

[2]By separate order the Court granted Defendants' motion to offer an unenumerated Rule 12(b) argument beyond time.

[3]Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the second informational order filed May 14, 2009. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (ECF No. 20.)

1   department's jurisdiction may appeal any departmental decision, action, condition, or policy which

2   they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, §

3   3084.1(a). Four levels of appeal are involved, including the informal level, first formal level, second

4   formal level, and third formal level, also known as the "Director's Level." Cal. Code Regs. tit 15,

5   § 3084.5.

6       Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative

7   defense which defendants have the burden of raising and proving the absence of exhaustion. Lira

8   v. Herrera, 427 F.3d 1164, 1171 (9th Cir. 2005). The failure to exhaust nonjudicial administrative

9   remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a

10   summary judgment motion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (citing Ritza

11   v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)).

12   "In deciding a motion to dismiss for failure to exhaust, a court may look beyond the pleadings and

13   decide disputed issues of fact." Sapp v. Kimbrell, 623 F.3d. 813, 821 (9th Cir. 2010) (quoting

14   Wyatt, 315 F.3d at 1119-20). If the court concludes that the prisoner has failed to exhaust

15   administrative remedies, the proper remedy is dismissal without prejudice, even where there has

16   been exhaustion while the suit is pending. Lira, 427 F.3d at 1171.

17       **B.**   **Discussion**

18       Plaintiff claims that his rights under the Eighth Amendment were violated when correctional

19   officers threw feces and urine at him. Plaintiff alleges that on September 9, 2002, Defendant Granillo

20   threw a dust pan full of feces on Plaintiff, striking him in the face and torso while he was secured in

21   his cell. Plaintiff also claims that Defendant Lopez threw a cup full of urine on Plaintiff while he was

22   in his cell on September 15, 2002. Plaintiff states that Defendant Julie Brimage was present during

23   both incidents and took no action to prevent the incidents from occurring.

24       Plaintiff stated that after the incidents occurred he attempted to tell a sergeant, but no sergeant

25   responded. (Deposition of Carlos Hendon, p. 45.) After he was taken off management status he

26   completed an inmate appeal form and mailed it to the appeals coordinator. (Id. at. 46.) Plaintiff filed

27   his administrative grievance on September 23, 2002. (Opposition 7, ECF No. 41.) Plaintiff never

28   received a response so he submitted a second appeal and never received a response to that appeal

1    either. (Deposition of Carlos Hendon at 47.)  He never received a log number for either appeal and

2    does not have a copy. (Id. at 48.)  When Plaintiff filed his inmate appeals he included both incidents

3    on the same grievance form.  He complained that he had been gassed by Defendants Lopez and

4    Granillo. (Id. at 51.)  He never mentioned Defendant Brimage in the appeals.  (Id. at 52.)

5    Defendants argue that Plaintiff never submitted an inmate appeal based on these incidents.

6    The only appeal submitted by Plaintiff was related to the denial of due process at his disciplinary

7    hearing and did not mention the alleged assault by Defendants Granillo or Lopez.  Therefore Plaintiff

8    failed to exhaust his administrative remedies and the action should be dismissed.

9    Defendants have not submitted any documentation to indicate that Plaintiff failed to exhaust

10   administrative remedies.  The evidence submitted merely indicates that there are no records to show

11   whether Plaintiff submitted an inmate appeal on these incidents in 2002.  Additionally, if he did

12   submit an appeal as he claims, there is no evidence to show if it was returned because it did not

13   comply with the regulations or if officials failed to respond.  Defendants have failed to meet their

14   burden of showing that Plaintiff failed to exhaust his administrative remedies and the motion to

15   dismiss for failure to exhaust should be denied.

16   **III.   Motion for Summary Judgment**

17   **A.   Legal Standard**

18   Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when

19   it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party

20   is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time

21   for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

22   existence of an element essential to that party's case, and on which that party will bear the burden of

23   proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally

24   construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir.

25   2010.) The "party seeking summary judgment bears the initial responsibility of informing the district

26   court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers

27   to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

28   demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Rule

4

56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010)

**B.    Plaintiff's Allegations**

Plaintiff alleges that on September 9, 2002, Defendant Granillo threw a dustpan full of Plaintiff's feces at Plaintiff, striking him in the chest and face. On September 15, 2002, Defendant Lopez threw a cup of urine on Plaintiff striking him in the back of the head and on his back. Defendant Brimage stood by and watched while these incidents took place. (Second Amend. Compl. 3, ECF No. 11.) As a result of these incidents, Plaintiff suffered pain and a stinging sensation in his eyes and on his skin and suffers from Post Traumatic Stress Disorder. Plaintiff also brings state law claims for negligence and assault and battery due to these incidents. (Id. at 4.)

**C.    Undisputed Facts[4]**

1.    Plaintiff is a state prisoner who was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at all times material to the matters at issue.

2.    Defendants Granillo, Lopez, and Brimage are Correctional Officers employed by the

---

[4] Plaintiff did not comply with Local Rule 260(b), therefore the Court compiled the statement of undisputed facts from Defendant's statement of undisputed facts, Plaintiff's oppositions to the motions for summary judgment, and Plaintiff's complaint

CDCR, were assigned to the California Correctional Institution ("CCI"), and were working in the administrative segregation unit at all times material to the matters at issue.

3.  The administrative segregation unit houses inmates whose presence in the institution's general population presents a threat to the safety of the inmate or others, endangers security, or jeopardizes the integrity of an investigation.  When a determination is made that the inmate poses a threat, he is immediately removed from the general population and placed into administrative segregation.

4.  Plaintiff was transferred to CCI's Security Housing Unit (SHU) on June 5, 2002, after he threatened a staff member while housed at Salinas Valley State Prison.

5.  While in the SHU, Plaintiff continued to exhibit disruptive behavior.  Because of his disorderly conduct, when released from the SHU, Plaintiff was retained in administrative segregation pending a review of his housing status.

6.  Inmates housed in administrative segregation do not go to the chow hall for meals, but have meals delivered to their cells by staff members.

7.  When cell feeding the inmates, officers generally work in pairs; one officer opens the food port on the cell door, the other officer passes the food tray to the inmate.

8.  The food ports open outward forming a five-inch ledge on the outside of the door on which the officer can rest the inmate's tray.  The tray can then be grabbed by the inmate.

9.  On the morning of September 9, 2002, Plaintiff was upset with custody staff.  As a sign of his displeasure, Plaintiff slid some of his feces underneath his cell door, out onto the tier.

10.  When an inmate slides fecal matter out onto the tier it is the officer's duty to clean it up.  The officer uses a hose to wash the feces down the hallway to the shower drain, which is located about ten feet away from the cells.

11.  Defendant Granillo was working second watch in the administrative segregation housing unit on the morning of September 9, 2002.  Defendant Granillo hosed the

feces away from the front of the cell that morning.

12.    Later that same day, Defendant Lopez was working third watch in the administrative segregation unit.

13.    At approximately 8:00 p.m., Defendant Lopez heard banging coming from B-Section. Defendant Lopez thought it sounded like an inmate was kicking his cell door.

14.    Defendant Lopez entered B-Section and saw Plaintiff standing at the door to his cell. When Defendant Lopez asked Plaintiff if he had been kicking his door, Plaintiff replied, "yes," and then asked why he had not received his dinner tray. Defendant Lopez explained that Plaintiff had refused his tray, but offered to go get Plaintiff a tray if he wanted to eat. Plaintiff requested a tray and Defendant Lopez left the tier to go retrieve one.

15.    Because it was not time for cell feeding, Defendant Lopez was alone when he returned with the tray. Defendant Lopez opened the food port on Plaintiff's cell door and placed the tray on the ledge.

16.    Plaintiff quickly grabbed a milk carton from inside his cell and threw the contents out of the food port before Defendant Lopez was able to close it. The carton contained liquid mixed with fecal matter. The liquid hit Defendant Lopez on his vest and the lower part of his jumpsuit.

17.    Defendant Lopez left B-Section and went to the staff restroom to wash up, trying to decontaminate himself using a hose, soap, and water.

18.    Defendant Lopez told Officer Bohan that he had been "gassed" by Plaintiff.

19.    "Gassing" is the phrase used by prison staff to indicate that an inmate has thrown bodily fluids or excrement at an officer.

20.    Officer Bojan picked up Defendant Lopez's vest from the ground, then removed and decontaminated the vest's protective inserts.

21.    Sergeant Beckett was notified of the "gassing" incident via radio and responded to the housing unit where he saw Defendant Lopez standing in the rotunda. Defendant Lopez's uniform was wet from the abdomen, down. Sergeant Beckett also noticed

7

what appeared to be fecal matter on the vest.  Sergeant Beckett reported the incident to his supervisor, Lieutenant Cox, and then Beckett escorted Defendant Lopez to the medical clinic.

22.   Once inside the clinic, Defendant Lopez was examined by Medical Technical Assistant (MTA) Bishop, who noted that Defendant Lopez's uniform was wet from the abdomen area to his knees, with a small amount of feces still visible on his uniform.  Because of possible exposure to disease, MTA Bishop advised Defendant Lopez to seek medical attention either at the Emergency Room, or from his private physician.

23.   Medical staff looked at Plaintiff through the window of his cell to determine if he had suffered any injuries.  MTA Bishop noted no marks on Plaintiff's body, but he did notice fecal matter on the floor in front of Plaintiff's cell.  Plaintiff denied that he had suffered any injuries.

24.   Following the incident, Defendant Lopez advised Plaintiff of his *Miranda* rights.  Plaintiff elected to remain silent.

25.   Defendant Lopez then left the institution for further medical treatment, arriving at the Tehachapi Hospital Emergency room at approximately 9:10 p.m.

26.   Defendant Lopez filed a disciplinary violation against Plaintiff, noting the incident that had occurred on September 9, 2002.

**D.   Conditions of Confinement in Violation of the Eighth Amendment**

**1.   Legal Standard**

Liability under section 1983 exists where a defendant "acting under the color of law" has deprived the plaintiff "of a right secured by the Constitution or laws of the United States."  Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000).  Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

To prove a violation of the Eighth Amendment the plaintiff must "objectively show that he was deprived of something 'sufficiently serious,' and make a subjective showing that the deprivation

occurred with deliberate indifference to the inmate's health or safety." Thomas, 611 F.3d at 1150 (citations omitted).  Deliberate indifference requires a showing that "prison officials were aware of a "substantial risk of serious harm" to an inmates health or safety and that there was no "reasonable justification for the deprivation, in spite of that risk." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837, 844 (1994)).  Officials may be aware of the risk because it is obvious.  Thomas, 611 F.3d at 1152.The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006).

### 2. **Discussion**

Defendants claim that they are entitled to summary judgment because they did not violate Plaintiff's Eighth Amendment rights.  Defendants argue that they did not throw excrement on Plaintiff, and the undisputed evidence shows that Plaintiff was the assailant, and both Granillo and Lopez were the targets of Plaintiff's assaults.  Since the conditions Plaintiff alleges that he was subjected to lasted only a few minutes they do not rise to the level of a significant deprivation.  Plaintiff alleges that Defendant Granillo tossed Plaintiff's own fecal matter at him, striking him in the chest, face, and neck.  The excrement hit Plaintiff's shirt, which he took off and washed within a few minutes.  Later that same day, Plaintiff admits that he "gassed" Defendant Lopez with a cup filled with urine and feces.  Plaintiff alleges that Defendant Lopez responded by filling a cup with urine and throwing it at Plaintiff, striking him in the back.  Plaintiff cleaned up shortly after the incident.  Plaintiff was examined by medical personnel and found to have no marks and Plaintiff denied having injuries.

Additionally Defendants argue that actions taken for the purpose of harassment and abuse, which do not pose a substantial risk of serious harm, fall short of the requirement that they be "sufficiently serious."  Even taking Plaintiff's allegations against Defendants Granillo and Lopez as true, they constitute no more than *de minimis* acts of harassment, not cruel and unusual punishment.  Plaintiff's allegation against Defendant Brimage, that she was present and failed to intervene, requires that Plaintiff show that Defendant Brimage was aware that Plaintiff was at a substantial risk of harm and had an opportunity to act to prevent the harm.  In his deposition Plaintiff stated that Defendant

Lopez was by himself when he came to Plaintiff's cell.  Plaintiff was standing toward the back of the cell, facing the wall and could not see where Defendant Brimage was standing or determine her ability to see what was occurring.  Since Defendant Brimage did not see Defendant Lopez throw any liquid at Plaintiff she cannot be held liable for failure to intervene.

Defendants argue that even taking Plaintiff's allegations as true, they are not sufficiently serious to rise to the level of a Constitutional violation.  Routine discomfort that is inherent in the prison setting is insufficient to establish an Eighth Amendment violation, deprivations that deny "the minimal civilized measure of life's necessities" are objectively sufficiently serious.  Wilson v. Seiter, 501 U.S. 294, 298 (1991); Johnson, 217 F.3d at 731.  While the circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim, id., exposure to human waste carries particular weight in the determination.  See McBride v. Deer, 240 F.3d 1287, 1292 (10th Cir. 2001) ("human waste has been considered particularly offensive so that 'courts have been especially cautious about condoning conditions that include an inmate's proximity to [it]'") (citation omitted); Fruit v. Norris, 905 F.2d 1147, 1150-51 (8th Cir. 1990) (common sense suggests that officials would know "that unprotected contact with human waste could cause disease"); McCord v. Maggio, 927 F.2d 844, 848 (5th Cir. 1991) (it is unquestionably a health hazard to have an inmate live in "filthy water contaminated with human waste").

However, the circumstances in the cases finding an Eighth Amendment violation have been more severe than what is alleged here.  In McBride, an Eighth Amendment violation was found where the inmate was forced to live in a feces covered cell for three days.  McBride, 240 F.3d at 1292.  The inmate in McCord repeatedly had to live in sewage and foul water and slept on a bare mattress in water contaminated with human feces.  McCord, 927 F.2d at 846-47.  In Fruit, the inmates were required to clean out a wet-well portion of the prison's raw sewage lift-pump station, and were denied protective clothing and equipment.  Waste flowed continually into the wet-well and the inmates filled 5 gallon buckets to be lifted out of the well, while the temperature inside the well was 125 degrees.  Fruit, 905 F.2d at 1148.

The Ninth Circuit has held that subjecting an inmate to "a lack of sanitation that is severe or

10

prolonged can constitute an infliction of pain within the Eighth Amendment." <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1315 (9th Cir. 1995).  In <u>Anderson</u>, a civil rights action alleging that suicidal inmates were on occasion shackled to a grate over a pit toilet in a cell that was dirty and smelled bad, the claim was rejected because plaintiffs had failed to show that the conditions were more than temporary.  <u>Anderson</u>, 45 F.3d at 1315.  Plaintiff's allegation that his own feces was thrown on him and that on another occasion urine was thrown on him do not demonstrate a prolonged or severe deprivation that would rise to the level of a constitutional violation.  <u>See</u> <u>Hunt v. Downing</u>, 112 F.3d 452, 453 (10th Cir. 1997) (no Eighth Amendment claim where inmate made to sleep one night on urinated sheets while detained in a state juvenile facility as punishment for intentionally soiling the bed covers); <u>Greene v. Mazzuca</u>, 485 F.Supp.2d 447, 451 (S.D.N.Y. 2007) (claim that inmate was yelled and spit at, and threatened with time in SHU does not rise to level of a constitutional violation); <u>see also</u> <u>Muhammad v. Dir. of Corrections</u>, No. CIV S-07-0375 GEB GGH P, 2010 WL 3126169, at *6 (E.D.Cal. Aug. 6, 2010); <u>Stearns v. Woodford</u>, No. C 05-2443 JF, 2008 WL 4544372, at *4 (N.D.Cal. Sept. 30, 2008); <u>Grizzle v. Cambra</u>, No. C 96-885 SI (PR), 1999 WL 66139, at *9 (N.D.Cal Feb. 10, 1999); <u>cf.</u> <u>Sherman v. Gonzalez</u>, No. 2010 WL 2791565, *4-5 (E.D.Cal. July 14, 2010) (denying summary judgment where inmate suffered asthma attack).  Plaintiff immediately removed his clothing and was able to clean the substance off of him, so the exposure was for a very short period of time.  Additionally, Plaintiff suffered no injury.

While Plaintiff's allegations that feces and urine were thrown on him are revolting, and the Court in no way condones the actions, under the circumstances alleged in this action the conduct does not rise to the level of a constitutional violation and Defendants are entitled to summary adjudication.

**E.    State Law Tort Claims**

Defendants allege that Plaintiff's state law tort claims of negligence and assault and battery are barred because he failed to comply with the California Tort Claims Act.  Plaintiff claims that he filed a claim with the California Tort Claims Board but did not receive a response.  Since Plaintiff did not pursue the matter further he is barred from asserting his state law claims.

The Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known

as the State Board of Control, no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2010).  Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit.  State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1240 (2004); Shirk v. Vista Unified School District, 42 Cal.4th 201, 209 (2007).  Compliance with the Tort Claims Act is an element of the cause of action, Bodde, 32 Cal.4th at 1240, is required, and "failure to file a claim is fatal to a cause of action."  Hacienda La Puente Unified School Dist. Of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir. 1992); City of San Jose v. Superior Court, 12 Cal.3d 447, 454 (1974).

If written notice is not given that the claim is rejected, the Tort Claims Act requires that the claim must be filed "within two years from the accrual of the cause of action."  Cal. Gov't Code § 945.6(a)(2).  Plaintiff's cause of action accrued on September 9, 2002 and September 15, 2002.  Since Plaintiff asserts that he never received a response to his claim, the Tort Claims Act required him to file suit within two years.  The complaint in this action was filed on June 16, 2005, approximately nine months after the date he was required to file to be in compliance with the Tort Claims Act.[5] Therefore, Plaintiff failed to comply with the California Tort Claims Act and Defendants' motion for summary adjudication on his state law claims should be granted.

### F. Recovery for Emotional Injury and Qualified Immunity

Defendants' final arguments are that Plaintiff may not recover for emotional injury and that they are entitled to qualified immunity.  Because the Court recommends granting Defendants' motion based on the foregoing analysis, the Court does not reach Defendants' remaining arguments.

## IV. Conclusion and Recommendation

The Court finds that Defendants Granillo, Lopez and Brimage are entitled to judgment as a matter of law on Plaintiff's claims that they violated the Eighth Amendment.  Accordingly, it is HEREBY RECOMMENDED that Defendants' motions for summary judgment, filed July 9, 2010 and May 6, 2011, be GRANTED.

These findings and recommendations will be submitted to the United States District Judge

---

[5]California Code of Civil Procedure Section 352.1 does not apply to "a cause of action for which a claim is required to be presented in accordance with [the Tort Claims Act].  Cal. Code Civ. Proc. § 352.1(b).

1  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days

2  after being served with these findings and recommendations, the parties may file written objections

3  with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

4  Recommendations."  The parties are advised that failure to file objections within the specified time

5  may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

6  1991).

7

8  IT IS SO ORDERED.

9  **Dated:  June 6, 2011**                        /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE